The next case is Mota v. Barr. May it please the court. My name is attorney Justin Conlon and I represent the petitioner Mr. Mota. And resolution of this case rests on specifically how the court frames the issue in this case. BIA and the government have done is try to frame the issue in this case being what moral judgment would society make against someone who participates in the business of illegal drug trafficking regardless of how minor of a player they are in that business. And framing the issue in that way the BIA reached their conclusion. But precedent from the Supreme Court and from this court including the decision that was issued last week in Mendez says that that's not exactly how to frame the issue in this case. What the issue should be is what moral judgment would society make against someone who commits the minimum necessary conduct to violate the statute at issue here. And as we argued in our brief to this court and to the agency below there are at least three ways to violate the statute without participating in the business of illegal drug trafficking and without engaging in morally depraved conduct. And those three forms of conduct would be casually sharing a small amount of drugs in hand making essentially a frivolous offer to sell drugs that one doesn't possess and has no intent to transfer as well as an innocent bystander to a drug transaction who for reasons of convenience essentially transfers and hands a bag of drugs from one person to another but has no personal interest in the transaction and makes no profit from the transaction. And one important thing that we would point out is neither the BIA nor the government in their brief they never challenge that the statute at issue includes this conduct. And the reason why they do that is because they really can't. Regarding the innocent bystander example there's a specific Connecticut appellate court decision state versus Terrio where they upheld a conviction against a defendant who did exactly that. In the case of United States versus Savage this court specifically found that making a frivolous offer to sell drugs one doesn't possess. You have one minute left of your first three. Thank you. In the Savage case this court found that the Connecticut drug sale statute specifically covers these types of frivolous offers and the casual sharer is covered by the plain language of the statute. The statute specifically includes language that no person may give to another person in any controlled substance. Someone who casually shares drugs in private gives another person drugs. Beyond that the Connecticut definition of sale specifically says that any form of delivery of drugs counts as a sale and the Connecticut Supreme Court in state versus Webster held to the plain language of that sale definition saying every instance of drug transfer is outlawed and the Connecticut appellate court in state versus Johnson even a trace amount an amount that's insufficient to give the user basically sort of any effect a sale or transfer of that small amount is also a violation of this statute and the BIA and the government never really seriously argue how casually sharing a small amount of drugs in private which this court has said is more akin to simple possession than what people think of as drug trafficking. But it's not it's akin to simple possession perhaps but not simple possession. I guess I'm having trouble with figuring out how to conclude whether the knowing unlawful distribution of a controlled substance is an inherently reprehensible or why the BIA was so clearly wrong as you suggest in saying that because whether you give a small amount of crack to a friend or whether you sell it to an enemy it is conduct that exposes that person to dangers and that's why we criminalize narcotics. So what's wrong with that way of reaching the conclusion that the BIA reached? Well one example that I would point to would be which is what I cited in the 28J letter which would be taking an example that Judge Parker listed in the Mendez decision which is essentially a distraught parent who finds drugs and disposes of them and if you add one minor tweak to that scenario where one parent finds the drugs becomes so distraught that they can't really move or do anything and says to the other parent hey I found these drugs picks them up takes possession gives them to the other parent and says hey you dispose of these that transfer that giving is a sale of drugs under Connecticut law. Do you have one minute left? Yes thank you and the court found in the Mendez decision that this type of distraught parent destroying drugs. So is that how we're to determine whether the BIA erred in applying the categorical in assessing whether something's the CIMT and employing the categorical approach if we can hypothesize any factual scenario however likely or unlikely that we would think not reprehensible that it can't be a CIMT? Well I don't think you need to use level of hypothesis you need to just look at the language of the statute and you need to look at the language of the Connecticut Supreme Court decision in Webster which says any delivery every instance of delivery or giving a drug from one person to another regardless of any other circumstance giving or transferring a drug to another person is a violation of the statute that's what the plain language of the statute says and that's what the Connecticut Supreme Court says and again this court in Mendez said that that scenario is not morally depraved and if you just add in one parent finding it and giving it to the other that is giving another drugs which is clearly covered by the plain language of the statute and the Webster decision and that's no more morally depraved than what the court looked at in Mendez. Thank you you've reserved some rebuttal time. Thank you Your Honor. It may please the court, Tim Remnitz on behalf of the United States Attorney General. Tisner challenges the agency's determination that his conviction for possession for sale of a narcotic substance categorically constitutes a crime involving moral turpitude or CIMT for short however the board has long held for decades that unlawful knowing possession of an illegal substance distributed into society constitutes a CIMT and Tisner's arguments otherwise misunderstand or misinterpret Connecticut law. Tisner's arguments are threefold. First he argues that his crime is not categorically a CIMT because it includes gifting a small amount of narcotic analogizing his crime to social sharing of marijuana. However his statute does not include marijuana this is a narcotics offense. Second he argues this crime is not a CIMT categorically because it includes fraudulent offers. However as he admits in his applied brief fraudulent offers are included in a separate crime with separate elements. Not his crime of possession for sale of a narcotic substance. And third he argues this crime is not a CIMT because it includes innocent by standards. However what he presents to the court is applications of legal imagination presenting hypothetical factual scenarios are not borne out by case law and that kind of hypothetical legal imagination is prohibited by the Supreme Court in the categorical approach and therefore the petition for review should be denied. Starting with Tisner's first argument the government acknowledges that giving a gifting a small amount of narcotics is punished or punishable under the statute. However the board has never distinguished remuneration or no remuneration. Where moral turpitude adheres is in a distribution of a dangerous substance into society. They've been holding that since Matter of Wine in 1946, through Matter of Corn in 1997, Matter of Gonzales Rumlas in 2016, the case is vetted by both parties, the board has consistently found that what is important is you are knowingly distributing a dangerous substance into society and that is broad social harm versus personal use which the board understands does not have the same effect. You have one minute left of your first three. Thank you. And Tisner has never shown any case where the social sharing or giving away of a narcotic substance versus marijuana, that moral opinions have changed versus distributing a narcotic substance such as crack cocaine. Again, he's only finding cases involving marijuana, he cannot be prosecuted for marijuana under his statute of conviction, this is a narcotic statute. And in fact the case he cites for, both parties cite Johnson, where it states that a small amount of narcotics will do, has a very good reason for why it allows that under the statute. Johnson states it is because of the dangerousness of narcotics in particular versus other controlled substances. The distinction is the legislator's intent that any distribution of narcotic substance should be suppressed. And this is because narcotics are Schedule I and Schedule II substances for the most part. Schedule I and Schedule II include the most dangerous, most addictive substances. That is why a small amount of narcotics is prosecuted under this statute. Second, Tisner's second argument that is, fraudulent offers, fraudulent offers are not included under this statute. Tisner cites the case of Mahone for this proposition and Mahone clearly states there are separate crimes prosecuted under the statute with different elements. The case of the crime that Tisner is referring to and that he names straight sale of narcotics does not require possession. And Mahone clearly states that there are two crimes under the statute, possession of a narcotic substance with intent to sale and sale of a narcotic. The latter does not require possession. And they have different elements and only straight sale has been interpreted by this court in U.S. v. Savage to include a fraudulent offer. But it also bears noting that in Webster, State v. Webster, a case cited by a petition in 2013, Connecticut court may have overruled Savage, or at least Savage's interpretation that Connecticut law actually includes fraudulent offers because Webster states the offer was not previously defined in Connecticut law and they defined offer in Webster to require possession. And that would appear to obviate Savage's holding that it would include fraudulent offers for this separate crime. But again, the court does not have to get there because we're dealing with a different crime that did not include fraudulent offers. Finally, the third argument about innocent bystanders, he cites a case Thoreau for this argument. But there are no innocent bystanders in Thoreau. The person in that case, the defendant, was charged with distribution of narcotics because they passed or shared narcotics from someone inside the hotel room to a buyer outside the hotel room. But in that case, she certainly wasn't innocent because she was, the defendant was ultimately charged with manslaughter as well because the person she distributed the narcotics to had a fatal overdose from the narcotics that she distributed. So far from innocent bystanders, this case submitted by Petitioner emphasizes the danger that comes with even giving away a narcotic substance. Unless the panel has any further questions, the government submits it up. Thank you, Mr. Ramnitz. Mr. Conlon, you reserve some rebuttal time. Thank you, Your Honor. So regarding the identity of the drug, first of all, we would argue that consistent with the immigration judge's first ruling, there is actually a drug that's covered by this law that is less dangerous than marijuana. There is a drug, which is the reason why the controlled substance removability charge was dismissed because the immigration judge agreed with us that there is a drug under the Connecticut narcotics definition, which the DEA specifically removed from federal controls, which they have not done for marijuana. So we would argue that the minimum necessary criminal conduct would be sharing a drug in private that's less dangerous than marijuana by the fact that the DEA removed that drug from federal controls. Beyond that, as we cited in our opening brief, there's a decision from the BIA, a matter of J.M. Acosta, 27-9, and Decision 420, 2018, where the BIA specifically says that the identity of the drug doesn't matter when determining whether a drug offense involved moral turpitude. It matters the actions that the defendant engaged in. So even under BIA precedent, they said that the identity of the drug doesn't matter. We would also point out that the BIA, again, never— Excuse me. You have one minute left. Sure. We would argue that it would be not fair for the court to uphold the BIA's decision under the Chenery Doctrine because, again, we argued from the beginning that this case is casual sharing and pointed to these decisions. And the immigration judge, the BIA, the government in their opening brief, even in this case, I mean, it's—basically, they waived this issue. They never said in their briefing these casual sharing cases aren't relevant because it's marijuana. And they had the opportunity to do that because we've been making that argument since the beginning. And then regarding the possession versus sale, we think that argument's a red herring because the way of violating the statute is a means, not an element. So whether you engage in a sale, whether you engage in a possession, whether you give, whether you distribute, those are means of violating the statute. So the fact that the petitioner in this case possessed with intent to sell is not something the court should be looking at under the categorical approach. Thank you, Mr. Conlon. Thank you, Your Honor. Thank you to both. Very helpful. That is the last case on the calendar to be argued this morning, so I'll ask the clerk to adjourn court. Court is adjourned.